IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

TERRANCE PRUDE,

    Plaintiff,

v.                                      Case No. 17-CV-336

ANTHONY MELI et al.,

    Defendants.

**DEFENDANTS' CONSOLIDATED BRIEF IN OPPOSITION TO PLAINTIFF'S MOTIONS FOR JUDGMENT ON THE PLEADINGS (DKT. 56) AND SUMMARY JUDGMENT (DKT. 57) AND IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants oppose Plaintiff's motions for judgment on the pleadings and for summary judgment. First, Defendants' Answer admits no material elements of any claim on which Prude may proceed. The motion for judgment on the pleadings should therefore be denied. Second, Plaintiff has not satisfied his initial burden to adduce evidence in support of any of his claims that would entitle him to a directed verdict at trial if uncontroverted, and even if he had, Defendants have adduced evidence showing a genuine issue of material fact on each of the claims. Plaintiff's motion for summary judgment should therefore be denied.

Defendants also move for summary judgment against Plaintiff's claims. There are no genuine issues of material fact that would permit a jury to find for Plaintiff.

**BRIEF STATEMENT OF FACTS**

Plaintiff Terrance Prude, an inmate at the Wisconsin Secure Program Facility ("WSPF"), has been permitted to proceed on two claims under 42 U.S.C. § 1983: (1) a Fourteenth Amendment procedural due process claim against WSPF Security Director Anthony Meli and WSPF Warden Gary Boughton based on Meli having allegedly withheld a letter from Attorney Robert Meyeroff at Plaintiff's disciplinary hearing; and (2) a First Amendment claim based on Meli having monitored Plaintiff's mail with Attorney Brent Nistler. (Defendants' Proposed Findings of Fact ("DPFOF") ¶ 1.)[1]

Plaintiff was designated as a security threat group member, i.e., a member of the Gangster Disciples, and his non-legal communications were therefore monitored at WCI since at least 2015. (*Id.* ¶ 4.) During the course of monitoring of Plaintiff's non-legal communications, it became apparent that he was expecting to receive a large amount of money from Attorney Brent Nistler as a percentage of an award from a civil action to which Plaintiff was not a party. (*Id.* ¶ 5.) It also became apparent that Prude was expecting to receive a copy of *From Gangster Disciple to the Blueprint Growth & Development* (the "Blueprint") through Nistler. (*Id.* ¶ 6.)[2] The Blueprint is disseminated amongst Gangster Disciples members both in and out of prison. (*Id.*) The Gangster Disciples are an ongoing, violent, interstate criminal enterprise with a

---

[1] The latter claim is characterized as a Fourteenth Amendment claim in the Seventh Circuit. *See Guajardo-Palma v. Martinson*, 622 F.3d 801, 802–03 (7th Cir. 2010).

[2] Plaintiff had an unknown third-party enter this material into the docket on his behalf in this case. (*Id.*) The return address used was Plaintiff's address at Wisconsin Secure Program Facility in Boscobel, WI, but the package was mailed from zip code 53204, which is in Milwaukee. (*Id.*)

2

significant presence in Wisconsin's prisons, including at WCI. (*Id.*) Within Wisconsin's prisons, the Gangster Disciples are designated as a security threat group. (*Id.*)

Because it appeared from Plaintiff's non-legal communications that he was in an improper business relationship with Nistler (and other inmates), i.e., splitting legal fees with an attorney for services rendered by the attorney to other inmates, that Plaintiff was expecting to receive contraband in the mail from Nistler, that Plaintiff was misusing his ability to communicate confidentially with Nistler for improper, non-legal purposes, and that Plaintiff was using three-way communication techniques, Meli made a decision to monitor Plaintiff's mail with Nistler after consultation with the Office of Legal Counsel in November 2016. (*Id.* ¶ 7.) The scope of Plaintiff's mail monitoring was broadened in order to discover contraband materials and other non-legal mail disguised as legal mail, not for the purpose of reading any actual legal mail. (*Id.* ¶ 8.) Meli did not read any of Plaintiff's actual legal mail. (*Id.*) A check from Nistler Law Office to Prude for $10,000 was intercepted and held at the Business Office at WCI on December 8, 2016. (*Id.* ¶ 9.)

Based on Plaintiff's improper activities, particularly his taking of a percentage of legal fees from another inmate, and also his having threatened staff during an interview, Plaintiff was issued Adult Conduct Report No. 2936062. (*Id.* ¶ 10.) Plaintiff was found guilty of Lying, Threats, Enterprises and Fraud, and Unauthorized Use of the Mail but not guilty of Unauthorized Transfer of Property. (*Id.* ¶ 11.) Plaintiff did not give Meli a letter from Robert Meyeroff prior to his disciplinary hearing on Adult

3

Conduct Report No. 2936062, and Meli did not withhold any such letter from the hearing officer. (*Id.* ¶ 12.) As Security Director, Meli had no authority under any state law, regulation, or policy to withhold evidence from a disciplinary hearing if submitted to him by an inmate. (*Id.* ¶ 14.)

The only inmate complaint Plaintiff has ever filed regarding alleged interference with his legal mail at WCI was filed in 2013, years before the underlying actions alleged in the present case: WCI-2013-2288. (*Id.* ¶ 2) Since November 2016, Plaintiff has filed two inmate complaints concerning his mail at WCI, but neither concerned claims of opening or otherwise interfering with his legal mail, only complaints of general delays in outgoing mail. (*Id.* ¶ 3.)

## LEGAL STANDARDS

### A. Judgment on the Pleadings

A party may move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c). "Where the plaintiff moves for judgment on the pleadings, the motion should not be granted unless it appears beyond doubt that the non-moving party cannot prove facts sufficient to support his position." *Hous. Auth. Risk Retention Grp., Inc. v. Chi. Hous. Auth.*, 378 F.3d 596, 600 (7th Cir. 2004) (citation and internal quotation marks omitted). "For purposes of determining whether a material issue of fact exists, uncontested allegations to which a party had an opportunity to respond are taken as true." *Flora v. Home Fed. Sav. & Loan Ass'n*, 685 F.2d 209, 211 (7th Cir. 1982). Only the pleadings are considered, meaning the complaint, the answer, and any written instruments attached as exhibits. *N. Ind.*

4

*Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). In other words, a plaintiff's motion for judgment on the pleadings is akin to a motion for summary judgment that relies not on any evidence adduced but purely on the allegations in the complaint and any admissions (or failures to deny) in the answer. Only if those allegations and admissions establish a claim as uncontested is the plaintiff entitled to judgment on the pleadings.

### B.  Summary Judgment

Under Federal Rules of Civil Procedure 56(a), "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden. Where the moving party bears the burden of persuasion at trial (offensive summary judgment), it must establish the essential elements of its claim or affirmative defense with credible evidence that would entitle it to a directed verdict if not controverted at trial. *Id.* at 331. By contrast, when the nonmoving party bears the burden of proving the claim or defense (defensive summary judgment), the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's

5

claim or defense; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to the nonmoving party's claim or defense. *Id.* at 323–24.

In opposing a motion for summary judgment, the nonmoving party must support assertions of disputed facts with citations "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). A party cannot avoid summary judgment by producing only inadmissible evidence. *See* Fed. R. Civ. P. 56(c)(2); *Baines v. Walgreen Co.*, 863 F.3d 656, 662 (7th Cir. 2017) (citing *id.*; *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742–43 (7th Cir. 1997)) ("Evidence offered at summary judgment must be admissible to the same extent as at trial . . . except that testimony can be presented in the form of affidavits or transcripts of sworn testimony rather than in person.").

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The admissible evidence of the nonmoving party is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249–50. Notably, facts are only viewed in the light most favorable to the nonmoving party where the dispute is genuine. *Scott v. Harris*, 550 U.S. 372, 380 (2007). Where a

nonmoving party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, the relevant dispute is not genuine, and "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

## ARGUMENT

### I. PLAINTIFF IS NOT ENTITLED TO JUDGMENT ON THE PLEADINGS.

Two claims have been permitted to proceed: (1) a Fourteenth Amendment due process claim based on Meli having allegedly withheld from the hearing officer, Captain Westra, an allegedly exculpatory letter from Robert Meyeroff; and (2) a First Amendment claim that Meli monitored Plaintiff's mail with Brent Nistler. (DPFOF ¶ 1.) Defendants denied these claims in the Answer. First, Defendants denied Plaintiff ever gave Meli a copy of a letter from Robert Meyeroff or that Meli lied about not having received it. (Dkt. 53 ¶¶ 49, 53–55, 59). Second, Defendants denied that Meli opened Plaintiff's legal mail with Nistler outside of his presence. (Dkt. 53 ¶¶ 103, 108–110.) Because Defendants did not admit, and in fact specifically denied, facts essential to Plaintiff's claims, Plaintiff's motion for judgment on the pleadings should be denied.

### II. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT, NOT PLAINTIFF.

  **A. Defendants are entitled to summary judgment against the Fourteenth Amendment due process claim for two independently sufficient reasons.**

  **1. Plaintiff cannot have been prejudiced by the alleged violation.**

7

The withholding of the Meyeroff letter cannot possibly have prejudiced Plaintiff, and "harmless error analysis applies to prison disciplinary proceedings." *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (citing *Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991)). There is no chance at all that Captain Westra would have found differently had he considered the Meyeroff letter. The charges against Plaintiff concerned the source of the $10,000 and his lie about it. (DPFOF ¶¶ 10–11). The Meyeroff letter did not mention or concern the source of the funds but related only to Plaintiff's intended use of the funds. (*See* Dkt. 1-1:11–12.) Plaintiff was found guilty of Lying, Enterprises and Fraud, and Unauthorized Use of the Mail based on the evidence that he had received the funds from another inmate (through Nistler) as a contingency fee for legal services and lied about that fact, not because of anything he intended to have Nistler, Meyeroff, or anyone else do with the funds. The Meyeroff letter is no evidence that Plaintiff had given Nistler the funds from any other source than his "cut" of Joeval Jones's settlement. Because the withholding of the Meyeroff letter cannot possibly have prejudiced Plaintiff, Defendants are entitled to summary judgment against the due process claim.

### 2. Meli did not commit the relevant act.

Finally, it is simply untrue that Plaintiff gave Meli a copy of the Meyeroff letter prior to the disciplinary hearing. (DPFOF ¶¶ 12–13.) Accordingly, Meli cannot have withheld it from the hearing officer, Captain Westra, even if doing so would have

prejudiced Plaintiff. Defendants are entitled to summary judgment against the due process claim, and Plaintiff is not entitled to summary judgment on the claim.[3]

### B. Defendants are entitled to summary judgment against the mail-monitoring claim for two independently sufficient reasons.

### 1. Plaintiff failed to exhaust his administrative remedies as to the mail-monitoring claim.[4]

### a. Exhaustion of administrative remedies is a legal prerequisite to filing suit under 42 U.S.C. § 1983.

The PLRA required Plaintiff to properly exhaust all available administrative remedies prior to filing suit in federal court:

> APPLICABILITY OF ADMINISTRATIVE REMEDIES.—No action shall be brought with respect to prison conditions under . . . 42 U.S.C. § 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available have been exhausted.

42 U.S.C. § 1997e(a). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). A suit filed by a prisoner "before administrative remedies have been

---

[3] Also, Plaintiff has adduced no proposed findings of fact relevant to this claim.

[4] The previous deadline for non-exhaustion motions was April 19, 2019. (Dkt. 62:4.) A month before that deadline, co-counsel requested leave to extend the time to respond to Plaintiff's premature summary judgment motion to May 31, 2019, promising in exchange to file Defendants' own summary judgment motion by that date, six months before the original due date of December 6, 2019. (Dkt. 73:3, 6.) Undersigned counsel was assigned to the case in mid-May to author the present motion and diligently noticed the issue. To the extent any further leave is required to raise the non-exhaustion argument in the present motion, undersigned counsel respectfully so requests. Because the case is in its early stages, Plaintiff will not be unfairly prejudiced by the extension of time.

exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits . . ." *Perez v. DOC*, 182 F.3d 532, 535 (7th Cir. 1999). The "judge must address the subject immediately" and resolve "disputes about its application before turning to any other issue in the suit." *Id.* at 536.

Prisoners must properly exhaust their administrative remedies by completing "the administrative review process in accordance with the applicable procedural rules." *Jones v. Bock*, 549 U.S. 199, 217–18 (2007) (citation omitted). This includes filing their complaints and appeals "in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Dye v. Bett*, 79 F. Appx 226, 228 (7th Cir. 2003).

The exhaustion requirement provides prompt notice and allows prison officials to address a situation internally. *Smith v. Zachary*, 255 F.3d 446, 450 (7th Cir. 2001). The process helps develop a factual record, prevents the exacerbation of any claimed damages, and is "preferable to a system where the prison might get its first notice of a claim in a lawsuit filed several years later." *Id.*; *see also Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013); *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). There is no substantial compliance exception; a good faith attempt to exhaust is not enough. *Smith*, 255 F.3d at 452. Furthermore, exhaustion is required no matter what relief the plaintiff seeks. *Booth v. Churner*, 532 U.S. 731 (2001).

### b. Wisconsin's principal administrative remedy is the Inmate Complaint Review System ("ICRS").

Wisconsin has established the ICRS as the principal administrative remedy for those individuals in state custody. Wis. Admin. Code § DOC 310.05.[5] Wisconsin law requires an inmate to file an ICRS complaint to challenge "significant issues regarding rules, living conditions, and staff actions affecting institution environment." *Id.* § DOC 310.08(1). The ICRS system has "the purpose of affording inmates a procedure by which grievances may be expeditiously raised, investigated, and decided." *Staples v. Young*, 149 Wis. 2d 80, 85, 438 N.W.2d 567 (1989).

Under the ICRS, an inmate must file an inmate complaint with the Inmate Complaint Examiner ("ICE") within 14 calendar days after the occurrence giving rise to the inmate complaint. Wis. Admin. Code § DOC 310.09(6). The ICE can accept late filings, but that decision is within the discretion of the hearing examiner, who may only accept a late filing for good cause shown. *Id.* The ICE then recommends action to a reviewing authority, who will either dismiss or affirm the inmate complaint. *Id.* §§ DOC 310.11, 310.12. The failure to properly complete each step in the process constitutes a failure to exhaust available administrative remedies and requires dismissal. *Pozo*, 286 F.3d at 1025.

---

[5] On April 1, 2018, a new version of Wis. Admin. Code § DOC ch. 310 went into effect. Though most provisions remain substantively the same, many have been renumbered. Because Plaintiff alleges the incident at issue occurred prior to that date, for the purposes of this motion, any reference to the Wis. Admin. Code ch. DOC 310 will be to the December 2014 version, which is available at https://docs.legis.wisconsin.gov/code/register/2018/747B/remove/doc310.pdf.

### c. Plaintiff failed to properly exhaust his administrative remedies.

Plaintiff never filed an inmate complaint about the alleged improper interference with his legal mail complained of in this lawsuit. (DPFOF ¶ 2.) The only inmate complaint Plaintiff has ever filed regarding alleged interference with his legal mail at WCI was filed in 2013, years before the underlying actions alleged in the present case. (*Id.*) Since November 2016, Plaintiff has filed two inmate complaints concerning his mail at WCI, but neither concerned claims of opening or otherwise interfering with his legal mail, only complaints of general delays in outgoing mail. (*Id.* ¶ 3.)

Accordingly, Defendants are entitled to summary judgment on the affirmative defense of failure to exhaust administrative remedies as to the mail-monitoring claim. *See* 42 U.S.C. § 1997e(a); *Jones*, 549 U.S. at 217–18; *Pozo*, 286 F.3d at 1025; Wis. Admin. Code § DOC 310.05.

### 2. Defendants are entitled to summary judgment on the merits against the mail-monitoring claim, and Plaintiff is not entitled to summary judgment on the claim.

Prison officials risk violating an inmate's rights if they open legal mail outside of the inmate's presence. *See Wolff v. McDonnell*, 418 U.S. 539, 577 (1974). However, mail is not legal mail for the purposes of constitutional protections simply because an inmate claims it is legal mail or because one party to a letter happens to be an attorney. *See Kaufman v. McCaughtry*, 419 F.3d 678, 686 (7th Cir. 2005). Prison authorities may examine inmates' putative legal mail to verify that it is indeed a communication related to current or prospective representation from a lawyer who is

12

in fact the inmate's lawyer. *Guajardo-Palma v. Martinson*, 622 F.3d 801, 804 (7th Cir. 2010). Opening an inmate's legal mail outside of his presence is only a "potential violation." *Id.* at 805. An inmate cannot make out a claim of interference with the right of access to the courts unless he can show that a legal claim was hindered as a result. *Id.* at 805–06 ("We think there must likewise b[e] a showing of hindrance in a claim of interference with a prisoner's communications with his lawyer."). Plaintiff has not sufficiently alleged any non-frivolous legal claims were hindered due to monitoring of his mail.

First, Plaintiff alleges interference with a putative ineffective assistance of counsel claim in his criminal case. (Dkt. 1, at ¶¶ 91–95; Dkt. 1-1:11–12.) The Meyeroff letter relates to such potential claims, but any such claims would be frivolous. Plaintiff alleges he wanted to collaterally attack his convictions and sentence on a theory of ineffective assistance of counsel. (*See* Dkt. 1-1:11–12.) The Court can take judicial notice of the fact that Plaintiff was convicted in 1999, (*see* Dkt. 23 in E.D. Wis. No. 2:11-cv-1005), and exhausted (or procedurally defaulted on) any ineffective-assistance-type post-conviction claims long before the events underlying the present action. *See* 28 U.S.C. § 2244(b), (d)(1); *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 517 N.W.2d 157 (1994) (citing Wis. Stat. § 974.06(4)). Indeed, the Wisconsin Court of Appeals had previously warned Plaintiff that he might even be *sanctioned* if he filed any more time-barred post-conviction motions. *See State v. Prude*, 2014 WI App 16, 352 Wis. 2d 575, 842 N.W.2d 537. Because another post-conviction motion would have been frivolous, its hindrance cannot form the basis of an access-to-the-courts claim.

13

Plaintiff also alleges Nistler had previously agreed to represent Plaintiff on a potential religious freedom claim under § 1983 and/or the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), but that Nitsler's potential representation was hindered due to the mail monitoring. (*See* Dkt. 1, at ¶¶ 104–09.) But Plaintiff's beliefs related to "Growth and Development" relate to the tenets of the Gangster Disciples street gang, *see, e.g.*, *United States v. Hoover*, 246 F.3d 1054, 1060 (7th Cir. 2001), and have nothing to do with religion. Plaintiff has adduced a copy of the relevant document into the docket, and it is not a religious document but a "blueprint" to, *inter alia*, "utilize the leadership of the gang structure to alter the negative behavior of the gangs membership . . . ." (Dkt. 23-1, at 4.) The document is not religious in nature because it concerns a secular "way of life." *See Kaufman v. McCaughtry*, 419 F.3d 678, 681 (7th Cir. 2005) (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 215–16 (1972)). And there is a "legitimate penological interest[]" in prohibiting the possession and dissemination (by known or suspected gang members) of a "blueprint" concerning organization, principles, leadership, discipline, etc., written by a gang leader. *See id.* (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

Plaintiff has not even sufficiently stated an access-to-the-courts claim in the Complaint, because he has not sufficiently stated any forward-looking, underlying Free Exercise or RLUIPA claim therein. *See Christopher v. Harbury*, 536 U.S. 403, 417–18 (2002). Simply alleging that "Growth and Development" is one's religion does not state a Free Exercise or RLUIPA claim. Nowhere in the Complaint does Plaintiff allege facts indicating how anyone had violated his rights in relation to his alleged

14

religion, i.e., the facts of his potential underlying claim. He simply notes he was thinking about bringing a claim related to the issue. Because the Complaint states no underlying Free Exercise or RLUIPA claim other than to identify such a potential claim, it states no access-to-the-courts claim:

> In sum, the right of a defendant in a backward-looking access suit to obtain early dismissal of a hopelessly incomplete claim for relief coincides in this case with the obligation of the Judicial Branch to avoid deciding constitutional issues needlessly. For the sake of each, *the complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it.*

*Id.* (emphasis added) (footnote omitted). Plaintiff must also allege and prove that an access-to-the-courts claim provides a remedy not otherwise available via the underlying claim:

> [W]hen the access claim (like this one) looks backward, *the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought*. There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element.

*Id.* at 415 (emphasis added). Plaintiff does not allege either the underlying facts of a potential Free Exercise or RLUIPA claim *or* that there is some remedy under the present access-to-the-courts claim that would not be available in an underlying Free Exercise or RLUIPA claim. Without alleging both of those things, he has failed to state a claim, and the Court should dismiss under 28 U.S.C. § 1915(e), which it may

do "at any time." At a minimum, Defendants are entitled to summary judgment on this claim, and Plaintiff is not.[6]

### III. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

Even if the Court believes there is a genuine issue of material fact as to whether Meli withheld the Meyeroff letter or monitored actual legal mail between Plaintiff and Nistler, Defendants would still be entitled to qualified immunity unless it would have been clear to Defendants that their actions were unconstitutional under existing Supreme Court or Seventh Circuit precedent. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Section 1983 defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in a certain situation and still be entitled to qualified immunity. *Saucier*, 533 U.S. at 205. Liability does not "require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011). The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality. The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *Id.* at 742.

---

[6] Also, Plaintiff has adduced no proposed findings of fact relevant to this claim.

Although the general constitutional standards recounted *supra* were clearly established, a court's assessment that a reasonable jury could find that particular acts or omissions constituted a violation of a general rule is not enough to support a denial of qualified immunity. *See id.* To deny qualified immunity, a court must find that at the time of the underlying acts or omissions, existing precedent had already put it "beyond debate" that those particular acts or omissions would constitute a violation of the general rule. *Id.*

First, even if the Court believes there is a question of fact that Meli withheld the Meyeroff letter from Captain Westra, it was not beyond debate under Supreme Court or Seventh Circuit precedent that withholding the letter from Meyeroff would violate the Due Process Clause of the Fourteenth Amendment under the circumstances. The letter was only potentially evidence as to Prude's intentions for his use of the funds. It was not relevant to the charges for which Captain Westra found Plaintiff guilty, which related to the source of the funds. It was not beyond debate that withholding irrelevant evidence would violate the Constitution under the *Wolff* line of cases. To the contrary, "prison disciplinary officials need not permit the presentation of irrelevant or repetitive evidence in order to afford prisoners due process in disciplinary proceedings." *Scruggs v. Jordan*, 485 F.3d 934, 939–40 (7th Cir. 2007) (citing *Forbes v. Trigg*, 976 F.2d 308, 318 (7th Cir. 1992)).

Second, it was not beyond debate under Supreme Court or Seventh Circuit precedent that the monitoring of mail with Nistler was unconstitutional where there was evidence Plaintiff was involved in an illegal fee-sharing arrangement with

17

Nistler involving the improper transfer of inmate funds and that Plaintiff was expecting to receive contraband through Nistler. Such an analysis requires a complex accommodation and balancing of competing interests under the circumstances. *See Turner v. Safley*, 482 U.S. 78, 89–91 (1987); *Guajardo-Palma*, 622 F.3d at 803–06. The legal question as to whether there was a violation is at best unclear. It cannot have been clear to a reasonable prison official in Meli's position that opening Plaintiff's mail under the circumstances would violate the Constitution.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court DENY Plaintiff's motions for judgment on the pleadings and summary judgment and GRANT Defendants' motion for summary judgment.

Dated this 31st day of May, 2019.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

s/Eliot M. Held
ELIOT M. HELD
Assistant Attorney General
State Bar #1079681

Attorneys for Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-8554
(608) 267-8906 (Fax)
heldem@doj.state.wi.us