IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

TERRANCE PRUDE,

    Plaintiff,

v.       Case No. 17-CV-0336

ANTHONY MELI, et al.,

    Defendants.

## DEFENDANTS' MOTION FOR SANCTIONS

Inmate-Plaintiff Terrance Prude fabricated four material documents in this case. He submitted three of them to the Court under penalty of perjury. Both this Court and the Seventh Circuit relied on the fabricated documents in their written opinions. Prude's repeated fabrication of documents—which is to say, fraud on the Court—cannot be tolerated. The Court should sanction Prude by dismissing this case with prejudice.

### Background

*Procedural History*

This case contains a tortuous procedural history that need not be fully recounted here. At the heart of the matter are Prude's allegations that Defendant (now retired) Security Director Anthony Meli seized $10,000 from Prude without due process of law. In short, Prude alleged and now holds forth that Meli investigated and decided to charge Prude with various violations of prison rules, that Meli was then

obliged to recuse himself from the disciplinary hearing on those charges, but that Meli instead controlled and directed every part of the disciplinary hearing, including its eventual disposition in which the hearing officer ordered the seizure of the $10,000. (*See* dkt. 179:3 (summarizing the allegations).)

This Court initially dismissed some of the claims based on these allegations and granted summary judgment to Meli on others. (*See* dkt. 179:6.) However, on Prude's appeal, the Seventh Circuit reversed in part. Relevant here, the Seventh Circuit held that there was a genuine dispute of fact as to whether Prude had an impartial decisionmaker at the disciplinary hearing. (Dkt. 179:10-13.) The court based that holding partly on evidence suggesting that Meli "performed a role traditionally associated with the decisionmaker: deciding what evidence Prude could present." (Dkt. 179:12.) That evidence took the form of a written response Meli gave to Prude on February 1, 2017, in which Meli purportedly wrote, "No—you can't present your evidence/statement at the hearing." (Dkt. 179.) Following its holding, the Seventh Circuit remanded to this Court to proceed on the issue of whether Prude was deprived of an impartial decisionmaker at the disciplinary hearing. (Dkt. 179.)[1]

On remand, the Court permitted the parties to conduct further discovery in advance of trial. Prude's counsel requested that Defendants produce copies of all correspondence between Meli and Prude during the relevant times. Defendants

---

[1] The Seventh Circuit's opinion addressed more claims and evidentiary issues than have been summarized in this brief. The precise ins and outs of these finer details are not relevant to the present issue, which is the simple factual question of whether Prude fabricated documents.

2

accordingly produced authentic copies of paper documents in Prude's security file at the institution. (Pusich Decl., ¶¶ 7-10.) And—herein lies the problem—that discovery has now uncovered that Prude fabricated at least three of the documents relied on by both this Court and the Seventh Circuit, including Meli's purported statement, "you can't present your evidence/statement at the hearing." Defendants conferred with Prude's counsel regarding their intent to seek sanctions, and now move for sanctions for the fabrication of evidence.

*The Fabrications*

"[T]he facts underlying a district court's decision to dismiss the suit or enter a default judgment as a sanction under Rule 37 or the court's inherent authority need only be established by a preponderance of the evidence." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 781 (7th Cir. 2016). Here, the preponderance of the evidence establishes that Prude fabricated at least four material documents in this case. Of these four, Prude submitted three to the Court under penalty of perjury, while the remaining one was produced in discovery only. We begin with the three documents in the first category, which are the more egregious.

All three of the fabricated documents submitted to the Court made their first appearance in Prude's Civil Complaint. Appended to the complaint, Prude attached 21 exhibits, which he said "support[ed] the sworn civil complaint allegations." (Dkt. 1:27.) Further, Prude averred,

> I, <u>Terrance Prude,</u> also swear under penalty of perjury statute, 28 U.S.C. 1746, that all the exhibit materials attached are true and correct originals and/or copies of originals marked <u>exhibits #1-#21.</u> ... This

3

paragraph authenticates all exhibit[]s attached to this sworn civil complaint and my signature below verifies this testimony.

(Dkt. 1:25 ¶ 133.) Prude signed immediately below this paragraph. (Dkt. 1:25.)

The offending documents came shortly on the heels of this attestation of truthfulness as Exhibits 2-3. Defendants will address them one by one, though out of order for ease of narrative.

### Exhibit 3

Prude attached as Exhibit 3 an Information/Interview Request exchanged between him and Meli in January and February 2017. (Dkt. 1-1:5.) The purported Request asks if Prude can "submit a written statement at the due process hearing…." It shows Meli's response as, "No—you **can't** present your evidence/statement at the hearing. Consistent with policy." (Dkt. 1-1:5 (emphasis added).)

[Image of handwritten Disposition of Request form showing "Information to Follow" checked, Date 2-1-17, Time 10:50 am, and Information/Comment: "NO - You can't present your evidence/statement at the hearing. Consistent with Policy", signed with "Security" as department.]

In contrast with the conveniently incriminating language contained in the version in Prude's complaint, the correct document contained in Prude's security file

4

tells a different story. Meli's actual response was, "No—you **can** present your evidence/statement at the hearing. Consistent with policy." (Pusich Decl., ¶ 13; Ex. 1006-001 (emphasis added).)

```
---------------------------------------------------------------
                  (Do Not Write Below This Line) (No Escriba Debajo Esta Linea
             DISPOSITION OF REQUEST  DISPOSICION DE LA SOLICITUD
```

☐ You Will Be Interviewed      Date:  2-1-17       Time: 10:50 am
   Usted sera entrevistado     Fecha:              Hora:
☒ Information to Follow
   Informacion Sera Proveida
☐ Request Referred To:
   Solicitud Refereida A: _____

Information/Comment:
Informacion/Comentario: NO – You can present your evidence/
statement at the hearing. Consistent with
Policy

_____T. W___l_____            _____Security_____
        Signed Firmado                 Department Departamento

But Meli's response was not the only thing Prude altered in Exhibit 3. In addition to changing "can" to "can't," Prude changed the substance of his initial question. Compare the version in Prude's complaint (dkt. 1-1:5)

5

> **INTERVIEW/INFORMATION REQUEST**
> **SOLICITUD PARA INFORMACION / ENTREVISTA**
>
> Instruction to Inmate: Do not use this form to contact health staff. Use a Health, Dental or Psychological Service Request.
>
> OFFENDER NAME / NOMBRE DEL/LA OFENSOR(A): Terrance Prude
> DOC NUMBER / NUMERO DEL/LA OFENSOR(A): 335674
> LIVING UNIT / UNIDAD DE VIVIENDA: Seg/C-125
> DATE / FECHA: January 25, 2017
> WORK ASSIGNMENT / ASIGNACION DE TRABAJO:
>
> ☐ Interview *Entrevista* ☒ Information *Informacion*
>
> STATE REASON FOR INTERVIEW OR SPECIFY INFORMATION REQUESTED
> *INDIQUE LA RAZON PARA LA ENTREVISTA O ESPECIFIQUE LA INFORMACION QUE SOLICITA*
>
> Re: Conduct Report Hearing #2936062; Can you submit the Meyeroff letter to the H/O I gave you? Can I submit a written statement at the due process hearing I have coming up? A mere "yes" or "no" answer will suffice. I also have evidence that proves that you misrepresented the facts in your C/R about DOC 303.31. Please respond.
> Note: Someone else should decide this request instead of you.

with the correct version

> **INTERVIEW/INFORMATION REQUEST**
> **SOLICITUD PARA INFORMACION / ENTREVISTA**
>
> Instruction to Inmate: Do not use this form to contact health staff. Use a Health, Dental or Psychological Service Request.
>
> OFFENDER NAME / NOMBRE DEL/LA OFENSOR(A): Terrance Prude
> DOC NUMBER / NUMERO DEL/LA OFENSOR(A): 335674
> LIVING UNIT / UNIDAD DE VIVIENDA: Seg/C-125
> DATE / FECHA: 1-30-17
> WORK ASSIGNMENT / ASIGNACION DE TRABAJO:
>
> ☐ Interview *Entrevista* ☒ Information *Informacion*
>
> STATE REASON FOR INTERVIEW OR SPECIFY INFORMATION REQUESTED
> *INDIQUE LA RAZON PARA LA ENTREVISTA O ESPECIFIQUE LA INFORMACION QUE SOLICITA*
>
> Re: Conduct Report Hearing
>
> Can I submit a written statement at the due process hearing I have coming up? A mere "yes" or "no" answer will suffice.

(Ex. 1006-001.)

6

It is indisputable that Prude fabricated the version he attached to his complaint. For one thing, the correct version held at the institution is maintained in the regular course of business, and there is no reason to doubt its authenticity. (Pusich Decl. ¶¶ 1-10.) For another thing, it is plain from the face of the documents that they are consistent except for the additions made by Prude, and it would have been the work of but a moment for Prude to handwrite in the added language. Indeed, looking at Meli's response, it is clear that Prude inserted the " 't " in "can**'t**" because the spacing and thickness differ from the rest of the line:

*NO - You can't present your evidence/*

Aside from this typographical point, it is also worth noting that Meli's response makes no sense in Prude's version but does make sense in the correct version. The Wisconsin Administrative Code plainly allows inmates to present certain evidence at a major disciplinary hearing. Wis. Admin. Code § DOC 303.80(5). It also provides that an inmate may make a "verbal statement" at the hearing. Wis. Admin. Code § DOC 303.81(3)(b). However, pursuant to the Code, "[a]n inmate may submit a *written* statement in lieu of an oral statement only under extraordinary circumstances as authorized by the security director." Wis. Admin. Code § DOC 303.80(5)(b) (emphasis added). It is thus entirely logical that Meli told Prude that, "No," he could not submit a written statement, but rather, he could present his evidence and statement at the hearing itself, "consistent with policy." In contrast, the language in Prude's version—that Prude could not present evidence or a statement at the hearing—would not be "consistent with policy," and it is implausible that Meli would write that it was.

7

Finally, Prude had a clear motive to make these fabrications. As explained above, Prude's claims boil down to an allegation that Meli improperly interfered with the disciplinary hearing and so deprived Prude of an impartial decisionmaker. The fabricated statement from Meli—that Prude can't present evidence—supported that claim and is the reason this case remains open. (Dkt. 179:11-12.) Likewise, Prude's additions to the original question—asking to submit the "Meyeroff letter" as evidence and the postscript that "someone else should decide the request instead of you"—support the inference that Meli improperly interfered. The nakedly self-serving nature of these additions support the finding that Prude fabricated them.

Exhibit 2

Before turning to the next two fabricated documents, both found in Exhibit 2, some additional background is needed. The $10,000 at issue was sent to Prude by Attorney Brent Nistler. Meli investigated the transaction and ultimately charged Prude partly on the basis that Prude had entered into an illegal business arrangement with Nistler (the charge is referred to as "enterprises and fraud"). (Dkt. 179:3-6.) Prude, on the other hand, maintained that Nistler merely acted as the middleman for Prude's friend, Joeval Jones, who Prude said had wanted to gift him $10,000 as a thank-you for work Prude did on Jones's legal case. (Dkt. 179:3-6.)[2] Meli added a charge of lying based on Prude's statement that the money was for a lawsuit he had won. (Dkt. 1-1:20.) Prude disputed the lying charge on the grounds that he

---

[2] There is a lot wrong with Prude's story—not the least of which is that receiving the money for legal work would still violate prison rules. But that is neither here nor there unless the case survives the present motion, which it should not.

8

had told Meli the money was for a friend's lawsuit, not his own lawsuit, and so had not lied. (Dkt. 1-1:23.)

Prude's fabrication of Exhibit 2 supported his position that he had told Meli the money was for Jones's lawsuit, not his own lawsuit. The document is another Information/Interview Request exchanged with Meli, together with a letter attached to the Request. (Dkt. 1-1:2-4.) As will now be shown, Prude fabricated both the Request and the attached letter.

As to the Request itself, the version Prude submitted to the Court appears thus:

> STATE REASON FOR INTERVIEW OR SPECIFY INFORMATION REQUESTED
> INDIQUE LA RAZON PARA LA ENTREVISTA O ESPECIFIQUE LA INFORMACION QUE SOLICITA.
>
> Please respond below to the handwritten letter to you I've attached. When will you come talk with me in person?
>
> Thank You
>
> Note: The letter I've attached dated 12-25-16 cites the case the funds came from that my friend won.

(Dkt. 1-1:2.)

However, the correct version contained in Prude's security file appears thus:

9

> STATE REASON FOR INTERVIEW OR SPECIFY INFORMATION REQUESTED
> INDIQUE LA RAZON PARA LA ENTREVISTA O ESPECIFIQUE LA INFORMACION QUE SOLICITA.
>
> Please respond below to the handwritten letter to you I've attached.
>
> Thank You

(Ex. 1005-001.)

Comparing the two versions reveals that Prude added the note clarifying "the case the funds came from that my friend won." This fabrication supported Prude's contention that he had not lied to Meli about the source of the funds.

Prude's fabrication of the attached letter was geared towards the same end. In relevant part, Prude's version reads,

> I was only told that my funds are being "frozen" or put on "hold" due to "security concerns". This explanation is not sufficient to seize my property (i.e. money) because it does not comport with my due process rights to notice. When books come in that are being reviewed for "security reasons" a notice is prepared to explain "what" the "security" concern is. Before my funds could be seized or put on "hold" you are required to explain the basis of this "security concern", which has not been done. Instead, when I request to obtain these notice requirements none are provided at all. When a person is TLU'ed a notice is provided to explain the basis of such placement. I'm very familiar with the rules governing funds and there's no rule that puts a limit on the amount of funds a prisoner can receive. The fact my lawyer sent it to me from a won lawsuit should have curbed any alleged concerns. See Case #15-CV-56-bbc.

10

(Dkt. 1-1:4.)

Whereas the correct version reads,

> I was only told that my funds are being "frozen" or put on "hold" due to "security concerns". This explanation is not sufficient to seize my property (i.e. money) or because it does not comport with my due process rights to notice. When books come in that are being reviewed for "security reasons" a notice is prepared to explain "what" the "security" concern is. Before my funds could be seized or put on "hold" you are required to explain the basis of this "security concern", which has not been done. Instead, when I request to obtain these notice requirements none are provided at all. When a person is TLU'ed a notice is provided to explain the basis of such placement. I'm very familiar with the rules governing funds and there's no rule that puts a limit on the amount of funds a prisoner can receive. The fact my lawyer sent it to me from a won lawsuit should have curbed any alleged concerns.

(Ex. 1005-003.)

The correct version obfuscates the source of the funds, identifying just "a won lawsuit." The fabricated version provides a case number at the end of the paragraph, again supporting Prude's contention that he had not lied to Meli.

### Discovery Document

Prude produced yet another fabricated Interview/Information Request during discovery, though this one he did not submit to the Court:

> **INTERVIEW/INFORMATION REQUEST**
> **SOLICITUD PARA INFORMACION / ENTREVISTA**
>
> Instruction to Inmate: Do not use this form to contact health staff. Use a Health, Dental or Psychological Service Request.
>
> OFFENDER NAME / NOMBRE DEL/LA OFENSOR(A): Terrance Prude
> DOC NUMBER / NUMERO DEL/LA OFENSOR(A): 335878
> LIVING UNIT / UNIDAD DE VIVIENDA: RHU-C-125
> DATE / FECHA: 1-27-2017 Friday
> WORK ASSIGNMENT / ASIGNACION DE TRABAJO:
>
> ☒ Interview Entrevista   ☒ Information Informacion
>
> STATE REASON FOR INTERVIEW OR SPECIFY INFORMATION REQUESTED
>
> I have a few questions for you Mr. Meli: (1) Did you direct the business office manager Ms. Kamphuis to put my funds in the state general funds no matter what happens at the disciplinary hearing?; (2) If I'm found not guilty of the charges in the CR you wrote will I get my funds back/unseized?; (3) ~~[scribbled]~~ The disposition you offered me of 180 DS and seize $10,000 to the state general fund, if I am found guilty is it practice to give the same disposition offered at the hearing? Please respond as soon as possible. Thank You.
>
> **DISPOSITION OF REQUEST   DISPOSICION DE LA SOLICITUD**
>
> ☐ You Will Be Interviewed / Usted sera entrevistado
> ☐ Information to Follow / Informacion Sera Proveida
> ☐ Request Referred To: / Solicitud Refereida A:
>
> Date/Fecha: 2/1/17   Time/Hora:
>
> Information/Comment: (1) Yes I did. See DOC 303.09(2); (2) No. A finding of not guilty would not mean the funds are not contraband. I've already determined they are contraband; (3) Yes. It is practice that the offered disposition will be the same penalty when found guilty. The funds belong to the state now.
>
> Signed/Firmado: T. Meli
> Department/Departamento: Security Office

(Pusich Decl., ¶ 14; Ex. 1007.)

The self-serving nature of the document is obvious, and Defendants will not beat a dead horse by listing all the ways it is so. The salient point is that the document is fabricated, which we know for two reasons. First, there is no record of it in Prude's security file. (Pusich Decl., ¶ 15.) And second, the purported response from Meli is

12

typewritten, seemingly on a typewriter, whereas actual responses to such requests are handwritten (to avoid exactly this type of fabrication, one supposes). (Pusich Decl., ¶ 16.)

In sum, Prude fabricated four material documents in this case and submitted three of them to the Court under penalty of perjury. Doubtless, there may be other counterfeits floating around in this case or in Prude's other cases that closer examination would dig up. But such excavations are unnecessary because the four documents already identified more than justify the sanction of dismissal, as explained in the next section.

**Argument**

Federal courts have inherent powers to sanction litigants for conduct that abuses the judicial process. *JFB Hart Coatings, Inc v. AM General LLC*, 764 F. Supp. 2d 974, 982 (N.D. Ill. 2011). "Sanctions meted out pursuant to the court's inherent power are appropriate where the offender has willfully abused the judicial process or otherwise conducted litigation in bad faith." *Salmeron v. Enterprise Recovery Systems, Inc.*, 579 F. 3d 787, 793 (7th Cir. 2009). The decision to dismiss a case for misconduct falls within the district court's discretion. *Id*. However, prior to dismissing a case as a sanction, a court must consider other options. *Rivera v. Drake*, 767 F. 3d 685, 686-87 (7th Cir. 2014). "In deciding what measure of sanctions to impose, the district court should consider the egregiousness of the conduct in question in relation to all aspects of the judicial process." *Greviskes v. Universities Research Ass'n, Inc.*, 417 F.3d 752, 759 (7th Cir 2005).

Fabricating evidence is "a near-classic example" of "fraud on the court." *JFB Hart Coatings, Inc*, 764 F. Supp. 2d at 982. A dismissal with prejudice is an appropriate sanction for a fraud on the court. *See Hoskins v. Dart*, 633 F. 3d 541 (7th Cir. 2011); *JFB Hart Coatings*, 764 F. Supp. 2d at 982. "[T]he judicial system cannot tolerate deception from litigants." *Neal v. LaRiva*, 765 F. 3d 788, 790 (7th Cir. 2014).

> [F]alsifying evidence to secure a court victory undermines the most basic foundations of our judicial system. If successful, the effort produces an unjust result. Even if it is not successful, the effort imposes unjust burdens on the opposing party, the judiciary, and honest litigants who count on the courts to decide their cases promptly and fairly.

*Secrease v. W. & S. Life Ins.*, 800 F. 3d 397, 402 (7th Cir. 2015).

Here, the preponderance of the evidence establishes that Prude has committed at least three frauds on the Court, as discussed above. This fraud alone justifies the sanction of dismissal with prejudice. *See id*. Further, no other sanction would be sufficient to deter similar conduct in future, either in this case or in Prude's many other cases. For example, as Prude is an incarcerated inmate serving an 80-year sentence, any monetary sanction would almost certainly be uncollectable and would offer no deterrent. Likewise, simply striking the offending documents would not deter Prude from trying his luck on the same ploy again in future.

More important than any practical consideration, though, is the principle that fraud on the court cannot be tolerated. "The most severe in the spectrum of sanctions provided by statute or rule must be available . . . not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Greviskes,* 417 F.3d at 759 (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643).

This principle is particularly pertinent here because Prude is a jailhouse lawyer who regularly drafts legal documents for other inmates. The Court must not allow his fraudulent practices to spread through the court and correctional systems. It should seize the opportunity to stamp out fabrications of evidence by imposing "the most severe in the spectrum of sanctions"—dismissal with prejudice. *Id*.

## Conclusion

For the reasons stated above, the Court should sanction Prude by dismissing this case with prejudice.

Dated: February 21, 2024.

        Respectfully submitted,

        JOSHUA L. KAUL
        Attorney General of Wisconsin


        <u>s/ Jonathon Davies</u>
        JONATHON M. DAVIES
        Assistant Attorney General
        State Bar #1102663

        REBECCA A. PAULSON
        Assistant Attorney General
        State Bar #1079833

        BRANDON T. FLUGAUR
        Assistant Attorney General
        State Bar #1074305

        Attorneys for Defendants Meli and Boughton

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857

(608) 266-0278 (Paulson)
(608) 261-8125 (Davies)
(608) 266-1780 (Flugaur)
(608) 267-8906 (Fax)
paulsonra@doj.state.wi.us
daviesjm@doj.state.wi.us
flugaurbt@doj.state.wi.us