§IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

TERRANCE PRUDE,

        Plaintiff,

    v.

ANTHONY MELI, *et al.*,

        Defendants.

OPINION AND ORDER

17-cv-336-slc

In this remanded prisoner civil rights lawsuit, the parties have filed competing motions for sanctions. Defendants ask this court to dismiss this lawsuit with prejudice based on their allegation that plaintiff Terrance Prude fabricated four material documents, three of which he filed with the court. *See* dkt. 204. Prude denies these allegations and contends that defendants have waived this claim by waiting too long to pursue it.

Prude has filed his own motion for sanctions, claiming that the Wisconsin Department of Corrections–with the knowledge of the Attorney General's Office–seized and deposited the $10,000 check at the heart of this lawsuit in intentional violation of DOC's governing procedures. Prude asks the court to order the State to give him the $10,000. *See* dkts. 225 & 226. The defendants don't dispute that the check was mishandled, but they deny any misconduct and contend that Prude filed this motion to divert attention from his own misconduct.

As set forth below, I am granting in part Prude's motion regarding the State's incorrect disposition of the $10,000 check (although Prude is not going to see this money), then I am granting defendants' motion to dismiss this case with prejudice.

## I. Procedural Background

Prude filed his complaint on May 17, 2017 (dkt. 1) and filed his amended complaint on July 31, 2017. (Dkt. 15). This is a due process lawsuit challenging disciplinary proceedings held against Prude at Waupun Correctional Institution following WCI's seizure of a $10,000 check mailed to Prude in December 2016 by Nistler Law Office S.C. in Milwaukee. WCI believed that this check was an improper payment to Prude for his work on another inmate's lawsuit (Joeval Jones).[1] Prude claimed that this was an unsolicited gift from Jones made without Prude's foreknowledge. According to Prude, Jones was grateful that Prude had helped Jones win his lawsuit against WCI, so Jones wanted to help Prude hire an attorney to assist Prude pursue post-conviction relief; Jones paid $10,000 to Nistler Law Office to represent Prude. However, Prude didn't want to hire Nistler, so Nistler mailed Prude a $10,000 check so he could hire someone else. WCI did not believe any of this: it believed that the $10,000 was an improper direct payment to Prude for the legal assistance that Prude had performed for Jones. WCI Security Director Meli was put in charge of investigation the matter, which resulted in a series of disciplinary charges against Prude. Following a hearing, Prude was found guilty of all but one charge by the hearing officer, Captain Jeremy Westra.

In this federal lawsuit, Prude alleges that Meli intentionally interfered with Prude's ability to defend against the charges and then ordered the adverse outcome. The interference included Meli improperly denying Prude's request to present a written statement to the hearing officer. *See* dkt. 1 at 14-15. Relevant to the defendant's pending sanction motion, Prude also accused

---

[1] This was Case No. 15 cv-576-bbc, a civil rights lawsuit by Jones against WCI defendants. At first, Jones proceeded pro se, with assistance from Prude. *See, e.g.*, dkt. 17. After Judge Crabb granted summary judgment in favor of Jones, *see* dkt. 48, the Nistler Law Office filed an appearance to represent Jones at a jury trial on damages. *See* dkt. 49. The parties settled before trial–apparently for $40,000–and the case was closed on November 4, 2016. *See* dkt. 65.

Meli of concocting a baseless charge of lying: according to Prude, Meli falsely asserted that Prude had told Meli that this money was from one of Prude's own lawsuits that he had won, not from Jones's lawsuit.  *See* dkt. 1 at 22 and Exh. 2.  Upon finding Prude guilty of four of the five charges, Westra directed that the check proceeds be deposited in the state's general fund. (This disposition of the funds was erroneous; more on this below).

This lawsuit was reassigned from the district judge to this magistrate judge on October 2, 2018. (Dkt. 34).  On November 19, 2018 I granted Prude leave to proceed on his due process claims against defendants Anthony Meli and Gary Boughton,[2] and on his First Amendment claim against Meli, but I denied Prude leave to proceed against proposed defendants Mueller and Westra. (Dkt. 41).  On August 27, 2019, Prude asked the court to reconsider its denial of leave to proceed against Westra (dkt. 104); on December 18, 2019, I denied that motion.  (Dkt. 128). All parties filed dispositive motions. *See* dkts. 56, 57, 75, 107 and 112.  On April 27,  2020, I denied Prude's three motions (dkts. 56, 57 and 107) and granted the two motions filed by the defendants (dkts. 75 & 112), thereby resolving this lawsuit in favor of Meli and Boughton.

On February 23, 2021, Prude appealed. (Dkt. 152).  On August 7, 2023, the court of appeals affirmed in part and reversed  in part, remanding for further proceedings on Prude's due process claim against Meli (and Boughton) and directing this court to allow Prude to proceed on his claim against Westra. (Dkt. 179).  *Prude v. Meli*, 76 F.4th 648 (7th Cir. 2023).

On October 17, 2023, the court reopened discovery and set a schedule leading toward a March 11, 2024 jury trial. (Dkt. 184).  On October 18, 2024, Prude voluntarily dismissed his

---

[2] Boughton has been included in this lawsuit solely in his official capacity as the warden of the Wisconsin Secure Program Facility (WSPF) because Prude is seeking injunctive relief. So, although Boughton technically is a defendant, he has no personal involvement in this case.   Therefore, I will not refer to him in the analysis that follows.

claim against Westra. (Dkt. 185). On October 24, 2023, Prude filed a request to schedule a mediation session. (Dkt. 188). The court set mediation for February 27, 2024.

On November 16, 2023, two lawyers from Winston & Strawn LLP's Houston Office filed a notice of appearance on Prude's behalf (dkts. 190 & 191), and the court agreed to reschedule the trial to April 22, 2024. (Dkt. 196).

On February 15, 2024, Prude's volunteer attorneys moved to withdraw, asserting that Rule 1.16 of the Wisconsin Rules of Profession Conduct for Attorneys, SCR chapter 20, "required termination of the representation." (Dkt. 203).[3] The court canceled the mediation session.

On February 21, 2024, defendants filed their motion for sanctions, asserting that Prude had forged four documents in order to skew the evidence in his favor, and had submitted three of them, which were considered by this court and the court of appeals. (Dkt. 204).

On March 8, 2024, I granted Winston and Strawn's motion to withdraw over Prude's objection. (Dkts. 208, 209 and 211).

On March 15, 2024, I advised the parties the court would hold an evidentiary hearing on Meli's motion for sanctions and I directed the parties to provide pre-hearing input. (Dkt. 212). On April 1, 2024, Prude filed a motion to deny defendants' motion for sanctions outright and not hold and evidentiary hearing (dkt. 213). In support of his motion, Prude filed a twelve-page sworn statement. (Dkt. 215). Over Prude's objection, on April 2, 2024 the court schedule

---

[3] Pursuant to SCR 20:1.16(a)(1) the only time that withdrawal of representation is *required* is if the representation will result in violation of the Rules of Profession Conduct or other law. Prude's response in opposition to counsel's motion (dkt. 208) confirms that counsel sought to withdraw because they believed that Prude had fabricated documents.

a Zoom evidentiary hearing for April 22, 2024.  On April 12, 2024, I denied Prude's motion to dismiss defendants' motion for sanctions. ( Dkt. 222).

On April 18, 2024, Prude filed his own motion for sanctions against defendants, alleging that the hearing examiner–Captain Westra–had intentionally mishandled the $10,000 check at the end of the disciplinary proceedings and, along with the AAGs defending this lawsuit, had been lying about this ever since.  (Dkt. 225). Prude offered to dismiss his lawsuit if WDOC would simply return the $10,000 to him.  (*Id.* at 8).  Prude filed a sworn declaration in support of his motion for sanctions. (Dkt. 226).   On April 19, 2024, defendants filed a brief in opposition to Prude's motion for sanctions. (Dkt. 229).  Prude filed his reply on April 29, 2024 (dkt. 244).

On April 22, 2024, the court held an evidentiary hearing via Zoom.  The State called three witnesses: defendant Meli; Assistant Attorney General Eliot Held, who had been defending this lawsuit until he became a witness in it; and  Yana Pusich, the current Security Director at WCI.   Prude testified by adopting his previously-submitted sworn statement as his direct testimony, then submitting himself to cross-examination.  *See* Transcript, dkt. 245.  Both sides relied on various exhibits, which were admitted into the record.  *See* dkts. 209, 215, and 235-242.  Post-hearing briefing followed.  *See* dkts. 249, 254, 257 and 259.[4]

## II. Prude's Motion for Sanctions, Dkt. 225

Prude has filed a motion for sanctions under F.R. Civ. Pro. 11 and this court's inherent authority.  He alleges that Captain Westra committed perjury in his sworn statements to the

---

[4] On July 5, 2024, Prude filed a motion for leave to file a sur-reply, *see* dkt. 258.  That motion is granted and I have considered this document.

court regarding disposition of the $10,000 check issued to Prude by the Nistler Law Office, and

that the assistant attorneys general assigned to this case knew this and supported Westra's lies.

As a sanction, Prude asks the court to order defendants to remit the check proceeds to Prude.

*See* dkt. 225 at 8.  In determining this motion, I find the following facts:

### A. Facts

On December 14, 2016, Waupun Correctional Institution (WCI) notified Prude by

memorandum that

> On December 8, 2016, the WCI Business Office received a check
> from Nistler Law Office in the amount of $10,000 made out to
> you.  This check will be held for security concerns and until further
> investigation is complete.[5]

> Dkt. 1-1 at 1.

The investigation led to an adult conduct report being filed against Prude, charging him

with five rule violations: Unauthorized Transfer of Property (DOC 303.40); Lying (DOC

303.31); Threats (DOC 303.18); Enterprises and Fraud (DOC 303.36); and Unauthorized Use

of the Mail (DOC 303.49).  *See* dkt. 1-1 at 13-21.

In a January 29, 2017 Interview/Information Request (Form DOC-643), Prude stated

that because the investigation was complete, "I'm requesting that my funds (i.e. $10,000) be

mailed to my criminal defense lawyer pursuant to DOC 309.20(4)(d)(1)."  Prude identified this

lawyer as Robert Meyeroff and provided WCI with a stamped envelope addressed to Meyeroff.

Dkt. 1-1 at 45.

---

[5]  A copy of the check is docketed as 226-1.

WCI's Business Office responded that

> Only a portion of the investigation is completed.  The Wisconsin Office of Lawyer Regulation has commenced a formal investigation of your attorney in connection with this matter.  The funds will be held until further notice.

> *Id.*

On February 2, 2017 WCI held Prude's disciplinary hearing.  Captain Westra was the hearing officer.  Westra found Prude guilty of all charges except the unauthorized transfer of property.  Dkt. 1-1 at 7.  As punishment, Westra recommended to WCI's deputy warden that Prude be given 180 days of disciplinary separation, and that the law firm's $10,000 check be deposited into the state's general fund.  The deputy warden accepted this recommendation, and the $10,000 check was deposited in the state general fund.  Dkt. 101 at 8.

On May 5, 2017, Prude filed the instant federal civil rights lawsuit.  On October 4, 2019, defendants filed a motion for summary judgment (dkt. 112).  As support for their proposed findings of fact, defendants submitted a 16-paragraph supplemental declaration of Jeremy Westra, sworn to under penalty of perjury. Dkt. 115.  Among other things, Westra stated that, upon determining that Prude was guilty of four of the charged offenses, "I determined . . . that the contraband of $10,000 should be seized and sent to the state general fund."  Westra continued: "All contraband funds are deposited into the state general fund, pursuant to Wis. Admin. Code DOC 303.09(2).  I would have no authority to deposit those funds elsewhere." Dkt. 115 at ¶¶ 12 & 13.

Westra attached to his affidavit a copy of the entire Chapter DOC 303 (Discipline). Section DOC 303.09 is titled "Seizure and disposition of contraband." Subsection (2) states that "Contraband funds shall be deposited in the state general fund."  Dkt. 115-1 at 5.

In their brief in support of summary judgment, defendants argued that

> The seizure of the contraband $10,000 was the only sensible result of a finding of guilt for "enterprises and fraud" relating to those funds, i.e., taking a percentage of an award or settlement for jailhouse lawyer services, and Captain Westra had no authority to dispose of such funds any way except to direct them to the state general fund.

> Dkt. 113 at 6, footnote omitted.

In his response brief, Prude argued that Meli had put in the fix with Westra before the hearing to make sure that the $10,000 would be placed in the state general fund via DOC 303.09(2). Prude did not contend that DOC 303.09(2) was the incorrect regulation to apply to the law firm's check. *See* dkt. 120 at 3-4.

In this court's summary judgment order, I found as an undisputed fact that DOC 303.09(2) required contraband funds to be deposited into the state general fund. Dkt. 131 at 9. I separately found that Westra had an adequate factual basis to deem the $10,000 check to be contraband. *Id.* at 14, n.8; *see also id.* at 16. On appeal, the court mentioned that Westra had ordered seizure of the $10,000 pursuant to DOC 303.09(2), a fact that no one contested. *Prude v. Meli*, 76 F.4th at 655, 657 n.5.

Following remand, Prude's new-to-the-case attorneys deposed Westra. Prude's counsel showed him a copy of Chapter 306 of the Policy and Procedures Governing WDOC's Division of Adult Institutions (DAI). Section 306.00.16 states:

### III. Disposition/Disposal of Contraband

If a disciplinary process has been conducted, the disposal of the items(s) shall be in accordance with this policy. Disposal shall be as follows:

A. Currency/cash
Confiscated money shall be deposited in the State's general fund.

B.    Checks

Checks and other negotiable instruments shall be returned to the issuer.  If it is not possible to determine an address for the issuer of the check, the check shall be destroyed.

In response to questioning, Westra confirmed that these DAI provisions were requirements.  The questioning continued:

Q:    Can a hearing officer opt to send a check to the state general fund instead of return it to the issuer?

A:    Not according to policy, no.

Q:    So if that was done in a case, that would be an incorrect disposition, is that your testimony?

A:    Yes.

Q:    All right.  We're done with that exhibit.

Dkt. 215-4 at 3.

In his sworn declaration in support of his sanctions motion, Prude asserts that on March 25, 2024, he sent an email to his girlfriend Felicia Smith to forward to AAG Davies, in which Prude claims to have invoked Rule 11's Safe Harbor Provision by demanding that the defendants to correct the record by admitting that WCI had illegally seized Prude's funds in violation of DAI Policy 306.00.16.III (B), and demanding that WDOC return the funds to him.  Prude also asserts that the AAGs defending this case knew that the DAI policy should have been applied, but that they intentionally withheld this information from Prude, from this court and from the court of appeals.  Defendants did not respond to this demand.

**B. Analysis**

Although Prude invokes Rule 11, he also invokes this court's inherent authority to punish defendants for their misconduct before the court. "A district court has inherent power to sanction a party who 'had willfully abused the judicial process or otherwise conducted litigation in bad faith.'" *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015) (quoting *Salmeron v. Enterprise Recovery Sys., Inc.*, 579 F.3d 787, 793 (7th Cir. 2009)). Prude has the burden to prove the factual basis for seeking sanctions to a preponderance of the evidence. *See Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 778-81 (7th Cir. 2016).

Here, there is a dispute of fact that at first blush might seem to require an evidentiary hearing: Prude alleges that Westra knew about DAI Policy 306.00.16 at the time of Prude's disciplinary hearing, but he ignored it and intentionally used the incorrect procedure set forth in Wis. Admin. Code DOC § 303.09(2). Defendants, in their terse response, proffer that Westra accurately recounted what the two different procedures state in his submissions, and they imply (without a new sworn statement from Westra) that Westra didn't realize that the DAI policy trumped the DOC administrative regulation until this policy was presented to him at his post-remand deposition. It was understandable, contend defendants, for a non-attorney to fail to take into account the supremacy of laws. Dkt. 229 at 3-4. "Prude has not shown perjury, fraud, or bad faith on the part of Westra or counsel. To the contrary, he has demonstrated a last-ditch effort to take the spotlight off of him on the even of the sanctions hearing." *Id.* at 4.

The court's response to the parties' competing contentions is twofold: first, although there is no dispute that Westra got it wrong when he put the check proceeds into the state's general fund, there is no evidence suggesting–and no logical reason to infer–that Westra purposefully chose this route this rather than return the check to the Nistler Law Office. But

even if Westra acted negligently rather than intentionally, this was an error of $10,000 in the State's favor that must be addressed.

This segues to the second point: even if this court were to assume, *arguendo*, that this was an intentional act by Westra with the full support of the AAGs, the outcome would be the same: Nistler Law Office is entitled to seek the return of the $10,000. If this $10,000 actually belonged to Joeval Jones, and the Nistler Law Office was just a conduit to Prude, then it would be up to the law firm and Jones to determine how they wish to proceed. Regardless, the bottom line is that the State put $10,000 into its general fund that should have been returned to the Nistler Law Office. Exactly how this gets resolved is not this court's concern in this lawsuit.

Here's why not: even if Westra had complied with the DAI instead of the DOC, Prude never would have seen the money: the check would have been returned to the Nistler Law Office. That's because Westra found that the $10,000 was contraband, which deprived Prude of any interest in the funds. In my summary judgment order, I found that the evidence supported Westra's decision.

Not so fast, Prude might interject: if Meli hadn't interfered with the disciplinary hearing, then Westra might have concluded that these funds were *not* contraband, which could have resulted in Prude keeping the $10,000. That's what the court of appeals directed this court to determine on remand, and if we were to hold a trial, then that might have been a possible outcome.

But there isn't going to be a trial: as discussed in the next section, I am granting the defendants' motion for sanctions and dismissing this case. Whether it's irony or karma, Prude has lost his opportunity to prove that Meli improperly put his thumb on the scale at Prude's disciplinary hearing because Prude improperly put his thumb on the scale in this federal lawsuit.

11

All this being so, Prude's misconduct does not absolve the state of its responsibility to address its pre-existing improper retention of the proceeds from Nistler Law Office's check.[6] But there is no reason to pursue Prude's motion for sanctions beyond this point because Prude's misconduct forecloses any other type of relief from this court.

## III. Defendants' Motion for Sanctions, Dkt. 204

### A. Facts

As noted at the outset, the court held a Zoom evidentiary hearing on April 24, 2024. I saw and heard the witnesses testify and I have made credibility determinations, taking into account all of the exhibits and all of the briefs, in which the parties offer diametric versions of what happened. I deal with each of the four alleged fabrications in turn:

### (1) Prude's Request to Present a Written Statement at His Disciplinary Hearing: Changes to Prude's Exh. 3

At Page 14 of his complaint (dkt. 1), Prude begins a section titled "Meli was a Bias[ed] Decisionmaker On Prude's Request To Present Evidence." In this section, Prude alleges that he sent Meli a completed DOC-643 Interview/Information Request Form dated January 25, 2017. In this form, Prude asks if he can submit a written statement and evidence at his disciplinary hearing regarding the $10,000 check, Prude advises Meli that Prude has evidence that Meli misrepresented the facts in his conduct report, and Prude states that someone else should decide this request besides Meli. According to Prude, Meli responded in writing that Prude could not

---

[6] In ordering the State to "address" this matter, I am limiting this court's involvement to giving the Nistler Law Firm notice of the incorrect disposition of its $10,000 check. What happens thereafter is between the law firm and the State.

submit a written statement or other evidence in his defense. *Id.* at 15.  In support of this

contention, Prude attached as Exh. 3 to his complaint this copy of his request and Meli's

response:



INTERVIEW/INFORMATION REQUEST
SOLICITUD PARA INFORMACION / ENTREVISTA

Instruction to Inmate: Do not use this form to contact health staff.  Use a Health, Dental or Psychological Service Request.

| OFFENDER NAME NOMBRE DE LA OFENSOR(A) | DOC NUMBER NUMERO DE LA OFENSOR(A) | LIVING UNIT UNIDAD DE VIVIENDA |
|---|---|---|
| Terrance Prude | 335478 | Seg/C-125 |

| DATE FECHA | WORK ASSIGNMENT ASIGNACION DE TRABAJO |
|---|---|
| January 25, 2017 | |

☐ Interview *Entrevista*    ☒ Information  *Informacion*

STATE REASON FOR INTERVIEW OR SPECIFY INFORMATION REQUESTED
*INDIQUE LA RAZON PARA LA ENTREVISTA O ESPECIFIQUE LA INFORMACION QUE SOLICITA*

Re: Conduct Report Hearing # 2936062;
Can you submit ▓▓▓ the Meyeroff letter to the H/O I gave you?
Can I submit a written statement at the due
process hearing I have coming up? A mere "yes"
or "no" answer will suffice. I also have evidence
that proves that you misrepresented the facts in your
C/R about DOC 303.31. Please respond.
Note: Someone ~~else~~ else should decide this request instead of You.

- - - - - - - - - - - - - - (Do Not Write Below This Line) *(No Escriba Debajo Esta Linea)* - - - - - - - - - - - - - -
DISPOSITION OF REQUEST  *DISPOSICION DE LA SOLICITUD*

☐ You Will Be Interviewed
   *Usted sera entrevistado*
☒ Information to Follow
   *Informacion Sera Proveida*
☐ Request Referred To:
   *Solicitud Referida A:*

| Date: Fecha: | ② 2-1-17 | Time: Hora: | 10:50 ᴀᴍ |
|---|---|---|---|

Information/Comment:
*Informacion/Comentario:*   NO - you can't present your evidence/
statement at the hearing. Consistent with
Policy

| T. Mel | Security |
|---|---|
| Signed *Firmado* | Department *Departamento* |

Exh. 3 is the document used and relied upon by the parties and the courts from the outset of this case through remand. *See* November 19, 2018 order on leave to proceed, dkt. 41, at 4 (Prude asked Meli not to take on a decision-making role at the disciplinary hearing); April 27, 2020 order on summary judgment, dkt. 131 at 6 (Meli told Prude he could not present his evidence at the hearing); *Prude v. Meli*, 76 F.4th at 654-55 (referencing this document) and at 658 (holding that it was improper for Meli to decide in advance what evidence Prude could present at the hearing.) Throughout these phases of the proceedings, Meli did not deny that the writing and signature on the bottom of Exh. 3 were his; however he denied that he had withheld any evidence, and he consistently insisted stated that he would not have had the authority to withhold any evidence that Prude actually had provided to him. *See* May 28, 2019 Declaration of Anthony Meli, dkt, 80, at 4.

Following remand, this court re-opened discovery in anticipation of trial. In their RFPs, Prude's new attorneys requested copies of all correspondence between Meli and Prude during the relevant time period. WCI's Security Director, Yana Pusich retrieved the documents responsive to this request from Prude's security file at WCI. Pursuant to WDOC's records retention policy, until 2018 hard copies of all DOC-643 Interview/Information Request forms were kept in an inmate's personal security file and retained there until the Records Disposition Authorization (RDA) stated that they could be destroyed. These files were stored in a secured vault at WCI to which only specified management employees had access. Inmates cannot access the vault or manipulate documents stored there. WCI staff cannot not pick and choose which documents go into an inmate's security file, nor could they access these documents to alter them after they were filed. The purpose of this system was to preserve accurate copies of all correspondence between WCI staff and inmates.

14

This is the December 25, 2016 Interview/ Information Request form that was retrieved from Prude's security file (dkt. 238):



DEPARTMENT OF CORRECTIONS
Division of Adult Institutions
DOC-643 (Rev. 4/2018)

WISCONSIN

**INTERVIEW/INFORMATION REQUEST**
*SOLICITUD PARA INFORMACION / ENTREVISTA*

Instruction to Inmate: Do not use this form to contact health staff. Use a Health, Dental or Psychological Service Request.

| OFFENDER NAME NOMBRE DE LA OFENSOR(A) | DOC NUMBER NUMERO DE LA A OFENSOR(A) | LIVING UNIT UNIDAD DE VIVIENDA |
|---|---|---|
| Terrance Prude | 335674 | Seg/C-125 |

DATE FECHA: 1-30-17     WORK ASSIGNMENT ASIGNACION DE TRABAJO

☐ Interview *Entrevista*     ☒ Information *Información*

STATE REASON FOR INTERVIEW OR SPECIFY INFORMATION REQUESTED
*INDIQUE LA RAZON PARA LA ENTREVISTA O ESPECIFIQUE LA INFORMACION QUE SOLICITA*

Re: Conduct Report Hearing

Can I submit a written statement at the due process hearing I have coming up? A mere "yes" or "no" answer will suffice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
(Do Not Write Below This Line) *(No Escriba Debajo Esta Línea)*
**DISPOSITION OF REQUEST** *DISPOSICION DE LA SOLICITUD*

☐ You Will Be Interviewed
   *Usted sera entrevistado*
☒ Information to Follow
   *Informacion Sera Provista*
☐ Request Referred To:
   *Solicitud Referida A:*

Date: Fecha: 2-1-17     Time: Hora: 10:50 am

Information/Comment:
*Información/Comentario:* NO - You can present your evidence/ statement at the hearing. Consistent with Policy

T. Ubel                    Security
Signed *Firmado*          Department *Departamento*

15

Missing from WCI's filed copy of this form are these additional hand-written statements by Prude on the form that he submitted to the court on Exh. 3:

> I also have evidence that proves that you misrepresented the facts in your C/R about DOC 303.31.  Please respond.

> Note: Someone else should decide this request instead of you.

Further, Meli's response has been changed from

> No – you **can** present your evidence/statement at the hearing. Consistent with policy.

To:

> No– you **can't** present your evidence/statement at the hearing. Consistent with Policy.

As defendants point out, the **'t** added after "can" differs in spacing and thickness, having essentially been crammed into the available space:



At the evidentiary hearing, Meli testified that the version of the document retained in Prude's security file in WCI's vault is the true and accurate document, and that he never subsequently altered this document.  I accept Meli's testimony as true.

Prude, on the other hand, testified that Meli altered the document himself, then chose not to file it in Prude's security file, instead handing the altered version back to Prude.  I reject Prude's testimony as a recent fabrication.  As a result, I conclude that Prude falsified Exh. 3 and submitted it to this court for the purpose of obtaining a favorable result in this lawsuit.  Here's why:

First, I have seen and heard Meli testify and I find his testimony on this issue credible, logical and supported by the other evidence.  Prude's attempts to impeach Meli's testimony fail. Meli has never embraced Exh. 3 as his document, not in his summary judgment affidavit (dkt. 80), not at his post-remand deposition (dkt. 215-3), not in his testimony at the sanctions hearing (dkt. 245).  Meli has consistently stated that he did not tell Prude that he could not present his evidence at his disciplinary hearing on the conduct report, and that this was not his decision to make.[7]

Second, WDOC policy corroborates Meli's explanation.  Inmates are allowed to present certain evidence at disciplinary hearings, *see* Wis. Admin. Code DOC 303.80(5), including a verbal statement, *see* DOC 303.81(3)(b), but they may not submit a written statement unless the security director finds extraordinary circumstances, *see* DOC 303.80(5)(b).  As a result, it would be *consistent* with policy for Meli to tell Prude that no, he could not submit a written statement, but that he could present his evidence and/or statement at the hearing.  It would be *inconsistent* with policy for Meli to tell Prude that he could not present his evidence at the hearing.

Third, Prude's version of events flouts credibility on multiple levels.  Only after the original version of the DOC-643 surfaced following remand did Prude assert for the very first time that Meli had stopped by Prude's cell on January 30 or 31, 2017 and the two of them had agreed to change the original request form to contain the new information found in Exh. 3.  At the evidentiary hearing, Prude recounted this conversation in great detail. *See* Tr., dkt. 245 at 107-08.  According to Prude, Meli wanted to change the "can" to "can't" to be consistent with

_____

[7] I attribute the failure of Meli or his attorneys to question the authenticity of the altered document at an earlier time to the breathtaking audacity of Prude's misconduct: apparently, it never occurred to them that Prude would behave so egregiously.

Meli's previous instructions to Randy Mueller (Prude's staff advocate for the hearing). This explanation is a recent fabrication: notwithstanding the critical importance of such a meeting to Prude's claim of Meli's interference with Prude's disciplinary hearing, Prude had never reported this alleged meeting or this alleged edit by Meli at any previous time: not in his complaint, not in his summary judgment submissions, not in his appeal, not at his post-remand deposition.  In fact, at his deposition, Prude denied that he had any other meetings with Meli between Meli's offer of a disposition and the disciplinary hearing.  *Id.* at 108-112.  Prude's post-remand attempts to explain how and when the original DOC-643 was altered are patently incredible.

To this effect, it is preposterous for Prude to contend that Meli would have come to Prude's cell to confirm to him Meli's intent to violate DOC policy by denying Prude the opportunity to present evidence at his disciplinary hearing, then alter the original request form to put this misconduct in writing, then hand the altered, self-incriminating document back to Prude for him to use against Meli later.  This simply never happened.

Based on all of the evidence in the record, and having made witness credibility determinations, I find that defendants have proved by a preponderance of the evidence that Prude fraudulently altered his DOC-643 request form, Exh. 3, for the purpose of influencing the outcome of this lawsuit.  Prude's subsequent sworn statements and testimony in support of his version of events are false.  This includes Prude's claim that he timely sent a letter to Assistant Attorney General Elliot Held about his meeting with Meli where the two of them  modified Exh. 3 by agreement:

**(2) Prude's Letter to AAG Held**

After Prude's attorneys moved to withdraw on February 15, 2024 (dkt. 203), Prude filed an objection to withdrawal (dkt. 208) in which he confirmed that counsel were withdrawing based on their belief that Prude had fabricated Exh. 3. Prude stated that they were wrong. To establish this, Prude submitted a sworn declaration (dkt. 209) in which he explained his version of how the original DOC -643 form got altered during the conversation he claimed to have had with Meli. This is the explanation that I have rejected as false in the preceding section.

Prude took this lie a step further: in an attempt to corroborate his newly-announced version of events, he attached as an exhibit a copy of a letter and mailing envelope that he claimed to have prepared and mailed to Assistant Attorney General Eliot Held on July 17, 2019. *See* Dkts. 209-5 and -6. This letter contains the same fabricated explanation and embellishes it by explaining that during his cell-side chat with Meli, Prude penned the added comments on the form, including his announcement that "I also have evidence that proves that you misrepresented the evidence in your C/R." Prude claims that he showed his accusatory additions to Meli, who was fine with them. *See* dkt. 209-6. The audacious illogic of Prude's explanation is astounding.

Here are the last two paragraphs of Prude's letter:

> As I've stated this is merely to alert you of this issue in good faith. If for any reason you elect not to believe my versions of events as it relate[s] to the amendments Meli and I both made to this document please let me know that you have an opposing version and I'll motion the court to strike the document (or any other document)( from the record. If I don't hear back from you I'll interpret your non-response as not having an issue with me filing and citing to the document in support of my claims in the case.

> If you have any concerns on this particular issue I bring to your attention please let me know.  Thank you Mr. Held.

> Dkt. 209-6.

In his sworn statement, Prude reports that after he mailed this letter, Held never objected to Prude's use of this document; indeed, says Prude, no one *ever* objected to Exh. 3 all the way through appeal and the remand order.  Prude claims that if Held had objected to his use of Exh. 3 in a timely fashion, then Prude could have dealt with this objection in a timely fashion, including not using the document "because I don't need the document to prove Meli was a bias[ed] decision maker."  Dkt. 209 at 9.  Prude accuses the attorney general's office of sandbagging him by not objecting to his use of Exh. 3 when he first notified AAG Held of its genesis back in 2019.  *Id.* at 9-10.

These submissions by Prude caused AAG Held to withdraw from this case (dkt. 228) so that he could testify at the evidentiary hearing.  Held testified that he had never seen Prude's letter until it was shown to him after remand.  Held also performed thorough due diligence, which confirmed that the Attorney General's Office had never received this letter.  Held testified that if he actually ever had received Prude's letter, then he would have investigated Prude's claim that he had met with Meli, which would have led Held to discuss this Meli, which in turn would have led Held to discover the unaltered version of the DOC-643 in Prude's security file.  Prude's attempts to impeach the accuracy of Held's testimony and to limit the inferences that the court should draw from it are unavailing.

Based on all of the evidence in the record, and having made witness credibility determinations, I find by a preponderance of the evidence that this letter did not exist in 2019.  The evidence, considered as a whole, establishes that Prude fabricated this letter after the

unaltered DOC-643 form was retrieved from his security file at Waupun in response to his attorneys' post-remand discovery requests. This is when the AAGs–and Prude's own attorneys– first realized that the actual DOC-643 extant at the time of Prude's disciplinary hearing had subsequently been altered in ways that were favorable to Prude. It is reasonable to infer that this revelation put Prude in damage control mode, which led him to fabricate the letter that he now falsely claims to have sent to Held in 2019.

**(3) Prude's Response to the Charge of Lying to Meli: Changes to Prude's Exh. 2**

As noted at the beginning of this order, one of Prude's claims of impropriety by Meli is that Meli improperly charged Prude with lying about the source of the $10,000 that Prude had received. Accordingly to Prude, Meli falsely claimed that Prude first had told him that it was money from Prude's victory in a lawsuit of his own, only later to admit that this money had been sent on Jones's behalf as a result of Jones's victory in his own lawsuit. Prude denied lying to Meli, asserting that Meli knew the truth from the outset. In his lawsuit before this court, Prude points to his December 25, 2016 DOC-643 form and attached letter as proof of his version of events. Prude makes other claims against Meli on this issue, but this overview suffices to provide context to the changed documents. Prude attached this DOC-643 to his complaint as Exh. 2.

This exhibit contains this handwritten message from Prude:

STATE REASON FOR INTERVIEW OR SPECIFY INFORMATION REQUESTED
INDIQUE LA RAZON PARA LA ENTREVISTA O ESPECIFIQUE LA INFORMACION QUE SOLICITA.

Please respond below to the handwritten letter to you
I've attached. When will you come talk with me in person?

Thank You

Note: The letter I've attached dated 12-25-16 & cites the
case the funds came from that my friend won.

As presented in Exh. 2, the handwritten letter to which Prude is referring contained this

paragraph:

I was only told that my funds are being "frozen"
or put on "hold" due to "security concerns". This explanation is
not sufficient to seize my property (i.e. money) because it
does not comport with my due process rights to notice. When books
come in that are being reviewed for "security reasons" a notice is
prepared to explain "what" the "security" concern is. Before my
funds could be seized or put on "hold" you are required to
explain the basis of this "security concern", which has not been done.
Instead, when I request to obtain these notice requirements none
are provided at all. When a person is TLU'ed a notice is provided
to explain the basis of such placement. I'm very familiar with the
rules governing funds and there's no rule that puts a limit on the
amount of funds a prisoner can receive. The fact my lawyer sent
it to me from a won lawsuit should have curbed any alleged
concerns. See Case# 15-CV-56-bbc.

Following remand, in response to the document request by Prude's attorneys, Waupun pulled the original DOC-643 from Prude's security file (dkt. 236):



STATE REASON FOR INTERVIEW OR SPECIFY INFORMATION REQUESTED
INDIQUE LA RAZON PARA LA ENTREVISTA O ESPECIFIQUE LA INFORMACION QUE SOLICITA.

Please respond below to the handwritten letter to you I've attached.

Thank You

It does not contain the sentence after "Thank You" that is seen on Exh. 2. The attached letter in Prude's security file also is different:



I was only told that my funds are being "frozen" or put on "hold" due to "security concerns". This explanation is not sufficient to seize my property (i.e. money) or because it does not comport with my due process rights to notice. When funds come in that are being reviewed for "security reasons" a notice is prepared to explain what the "security" concern is. Before my funds could be seized or put on "hold" you are required to explain the basis of this security concern, which has not been done. Instead, when I request to obtain these notice requirements none are provided at all. When a person is TLUed a notice is provided to explain the basis of such placement. I'm very familiar with the rules governing funds and there's no rule that puts a limit on the amount of funds a prisoner can receive. The fact my lawyer sent it to me from a won lawsuit should have curbed any alleged concerns.

23

This letter does not include the last sentence found on Exh. 2: "See Case #15-CV-56-bbc." Based on the testimony adduced at the evidentiary hearing, I find that the authentic versions of the DOC-643 and attached letter are the versions retrieved from Prude's security file. Prude altered the versions that he submitted to this court as an Exhibit to his complaint.

Based on all of the evidence in the record, and having made witness credibility determinations, I find by a preponderance of the evidence that Prude altered the DOC-643 form and altered the attached letter for the purpose of using them in this federal lawsuit to influence the outcome. The additions to both documents materially change their content by making it appear that Prude had specifically cited Jones's case to Meli in his written submissions, when in fact he had not. I am not finding that Prude was *not* referring to Jones's case in his original submissions; he may well have been. What I find is that Prude altered his DOC-643 and attached letter in order to make it appear that Meli's claim that Prude had lied to him about this matter was unreasonable and unjustified from the outset. These altered forms would be another (false) example that Prude would use to show how Meli had improperly manipulated the evidence and charges against Prude regarding the $10,000 check.

**(4)  The January 27, 2017 DOC-643 Produced by Prude in Discovery**

In their motion for sanctions, defendants report that Prude disclosed the following document during discovery:[8]

---

[8]  Prude did not file this document with the court.

**INTERVIEW/INFORMATION REQUEST**
*SOLICITUD PARA INFORMACION / ENTREVISTA*

Instruction to Inmate: Do not use this form to contact health staff. Use a Health, Dental or Psychological Service Request.

| OFFENDER NAME NOMBRE DE LA/LA OFENSOR(A) | DOC NUMBER NUMERO DE LA/LA OFENSOR(A) | LIVING UNIT UNIDAD DE VIVIENDA |
|---|---|---|
| Terrance Prude | 335879 | RHU-C-125 |

DATE
FECHA

1-27-2017 Friday

☒ Interview *Entrevista*    ☒ Information *Informacion*

WORK ASSIGNMENT
ASIGNACION DE TRABAJO

STATE REASON FOR INTERVIEW OR SPECIFY INFORMATION REQUESTED
*INDIQUE LA RAZON PARA LA ENTREVISTA O ESPECIFIQUE LA INFORMACION QUE SOLICITA*

I have a few questions for you Mr. Meli :(1) Did you direct the business office manager Ms. Kamphuis to put my funds in the state general funds no matter what happens at the disciplinary hearing?; (2) If I'm found not guilty of the charges in the CR you wrote will I get my funds back/unseized?; (3) The disposition you offered me of 180 DS and seize $10,000 to the state general fund, if I am found guilty is it practice to give the same disposition offered at the hearing? Please respond as soon as possible. Thank You.

(Do Not Write Below This Line) *(No Escriba Debajo Esta Linea)*
**DISPOSITION OF REQUEST** *DISPOSICION DE LA SOLICITUD*

☐ You Will Be Interviewed
  *Usted sera entrevistado*
☐ Information to Follow
  *Informacion Sera Proveida*
☐ Request Referred To:
  *Solicitud Referida A:*

Date: *Fecha:* 2/1/17    Time: *Hora:*

Information/Comment:
*Informacion/Comentario:*   (1) Yes I did. See DOC 303.09(2); (2) No. A

finding of not guilty would not mean the funds are not contraband.

I've already determined they are contraband; (3) Yes. It is

practice that the offered disposition will be the same penalty

when found guilty. The funds belong to the state now.

| T.Meli | Security Office |
|---|---|
| Signed *Firmado* | Department *Departamento* |

25

This document would have been put into Prude's security file in the ordinary course of business if it existed.  When Pusich reviewed Prude's security file in February 2024, this document was not in the file.

Pusich testified that WCI staff do not ever type their responses to such requests by inmates: staff do not have access to typewriters at Waupun; therefore, it was not technologically possible for this document to be authentic.

Melli testified that he did not type the response contained on this form.  He has *never* typed a response to an interview request.  He didn't have access to a typewriter.  He always hand-writes his responses and signs his name.  Further, Meli would not have answered this request the way that the typed response answered it because the typed response is incorrect: Meli had simply *alleged* that the $10,000 was contraband, he had not *determined* that it was, and this was not his determination to make.  It was up to the hearing officer at the hearing to make that determination.  If the hearing officer determined that the funds were not contraband, then WCI would return the funds to Prude.

Based on all the evidence in the record, and having made witness credibility determinations, I find that the defendants have proved by a preponderance of the evidence that this document is false, that Prude prepared it, and that he did so with the intent to falsely establish Meli's improper interference with the outcome of Prude's disciplinary hearing.  Prude has put into Meli's mouth words admitting that Meli has already decided the case adversely to Prude before the hearing even has been held.

**(5) Defendants' Discovery of Prude's Fraud**

Having considered all the documents in the file, including their contents and dates of submission, and having considered the testimony presented at the evidentiary hearing, I find that defendants and their attorneys were unaware of Prude's fraud until they reviewed Prude's security file in response to his attorneys' request for production of documents following remand. But for counsel's discovery request, Prude's fraud would not have been discovered and this case would have proceeded to a jury trial at which Prude would have presented his forged and altered documents in support of his due process claim.

**B. Analysis**

**(1) Defendants Have Not Waived Their Request for Sanctions**

In his opposition to defendants' motion for sanctions, Prude renews his assertion that defendants waited too long to bring it.  *See* dkt. 254 at 14-22.  On April 12, 2024, I denied Prude's first attempt to dismiss defendants' sanctions motion, citing *Chambers v. NASCO,* 501 U.S. 32, 44 (1991).  Dkt. 222 at 2.  Nothing in Prude's renewed motion changes this.  First, I have found as fact that defendants and their attorneys were unaware of Prude's fraud until Security Director Yana Pusich pulled the two unaltered DOC-643 forms from Prude's security file (and did not find the third).  That was less than a year ago, and defendants promptly filed their sanctions motion.  To the extent that Meli's consternation regarding the incorrect content of these forms raised red flags, his lawyers' failure to verify that the documents Prude had submitted were genuine does not constitute waiver.  As observed in footnote 7, above, Prude has no right to receive a pass on his misconduct on the ground that his victims didn't do more to discover it sooner.

Prude also is wrong for a more fundamental reason: it is never too late for the court to investigate and punish fraud committed against it. To provide context, let's dig a bit deeper into *Chambers*: petitioner Chambers's fraud against NASCO commenced in October 1983 and continued through proceedings in the district and appellate courts for years; it was 1989 before the district court finally made its findings of fraud and imposed sanctions "in this sordid, dishonest and deliberately unethical chain of events called a lawsuit." *NASCO v. Calcasieu Television and Radio, Inc.*, 124 F.R.D. 120, 131 (W.D. La. 1989).   The court's decision was upheld on appeal and by the Supreme Court, which found that the court's inherent power to punish fraud and other contempt "reaches both conduct before the court and that beyond the court's confines." *Chambers*, 5011 U.S. at 44.   The Court continued:

> This historic power of equity to set aside fraudulently begotten judgments is necessary to the integrity of the courts, for tampering with the administration of justice in this manner involves far more than an injury to a single litigant.   It is a wrong against the institutions set up to protect and safeguard the public.   Moreover, a court has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud.
>
> *Id.*, citations omitted.

This court not only has the power, it has the duty to determine what happened here.   As the facts found above establish, I have determined by a preponderance of the evidence that Prude has altered two DOC-643 forms, forged a third, and fabricated an after-the-fact letter to AAG Held, all for the purpose of attempting to win this lawsuit by fraudulent means.   His sworn statements and testimony in support of his version of events are false.

As a result, I am granting the defendants' motion for sanctions in this fashion:

**(2) The Court Is Dismissing Prude's Lawsuit**

"Dismissal pursuant to the court's inherent authority can be appropriate when the plaintiff has abused the judicial process by seeking relief based on information that the plaintiff knows is false." *Ramirez*, 845 F.3d at 776, quoting *Secrease*, 800 F.3d at 401.  That being so, a court must consider other sanctions before resorting to dismissal.  *Rivera v. Drake*, 767 F.3d 685, 786 (7th Cir. 2014); *see also Donelson v. Hardy*, 931 F.3d 565, 569 (7th Cir. 2019) ("[S]anctions, including dismissal, must be proportionate to the circumstances.  Considerations relevant to proportionality include the extent of the misconduct, the ineffectiveness of lesser sanctions, the harm from the misconduct, and the weakness of the case.").

A monetary sanction would be pointless.  Prude is indigent, proceeding *in forma pauperis* in this lawsuit.  *Secrease*, 800 F.3d at 402 ("[T]he threat of a monetary sanction would probably not influence" the behavior of a litigant proceeding *in forma pauperis*.) (citing *Rivera*, 77 F.3d at 687).  Although I am ordering the State to contact the Nistler Law Firm regarding the improperly seized $10,000 check, there is no indication that this money ever will end up in Prude's account.

Going forward to trial using the two unaltered DOC-643 forms (and excluding the forged document) would not come close to capturing the depth and breadth of Prude's misconduct.  It would essentially give Prude a mulligan: now that your fraud has been discovered, you still get your trial, but this time you'll have to follow the rules.

Instead, the staggering depth and breadth of Prude's fraud militate strongly toward dismissal, as well as additional sanctions.  As Prude's Exhibits 2 and 3 to his complaint establish, he built this lawsuit on a foundation of lies.  But for the diligence of Prude's volunteer attorneys, his fraud might never have been uncovered, and a jury might have been persuaded by his false

documents and testimony to find in his favor.[9]    Submitting false evidence to secure a court victory is an abuse of the judicial process that undermines the most basic foundations of our judicial system. *Secrease*, 800 F.3d at 402.

Segueing from this is the need for both specific and general deterrence. All litigants, including pro se prisoner plaintiffs, must understand that if they fabricate evidence, or intentionally and repeatedly mislead the court, then they face almost certain dismissal. *See Greviskes v. Universities Research Assn., Inc.*, 417 F.3d 752, 759 (7th Cir. 2005), citation omitted.

Having found facts and having considered the totality of the circumstances, I conclude that dismissal Prude's lawsuit is a proportionate sanction for Prude's misconduct.

### (3) The Court Declines to Impose Any Strikes on Prude

Defendants ask the court to impose three strikes on Prude, one for his initial filing of his complaint, a second for his appeal, and a third for his continued use of his fraudulent documents on remand. *See* dkt. 249 at 18-19. That's not going to happen. First, this court would not presume to enter a strike on behalf of the court of appeals. Second, 28 U.S.C. § 1915(g) limits the circumstances in which a prisoner who has brought three or more actions that were dismissed as frivolous, malicious, or for failure to state a claim, may proceed *in forma pauperis.* There is no language in the statute suggesting that a dismissal as a sanction for misconduct counts as a "strike;" defendants cite no authority allowing me to designate this dismissal as a strike; and I cannot conclude that these lawsuits were frivolous or maliciously filed *See Hoskins v. Dart*, 633 F.3d 541 (7th Cir. 2011) (dismissals as a sanction for disobeying a court rule were not "strikes,"

---

[9] Although there is good reason to doubt everything that Prude has claimed in this lawsuit, the question whether he actually suffered a due process violation at his disciplinary hearing will not be answered. That's a foreseeable and acceptable consequence of his attempt to prevail by fraud.

since they were not dismissals for failure to state a claim, or because the lawsuits were frivolous or malicious).  As noted in the analysis above, the question whether Meli violated Prude's due process rights is not going to be answered as a result of the dismissal.  Although I have found that Prude has forged documents and lied about a lot of things, material disputes about who said what to whom remain unresolved.  Thus, I am not in a position to find that the complaint Prude filed was malicious or frivolous.

### (4) Although a Litigation Bar Would Be Appropriate, This Judicial Officer Does Not Have the Power To Impose One

A better remedy than a strike would be a litigation bar on Prude.  In the past, Chief Judge Peterson has dismissed all pending cases and imposed a filing bar on a pro se prisoner litigant who demonstrated a sustained pattern of dishonesty before the court. *See, Lindsey v. Johnston*, Case No. 18-cv-398-jdp, 2018 WL 6606241 at *3-4 (W.D. Wis. 2018).  This would be an appropriate sanction against Prude in this case, but my authority over Prude's lawsuits in this court is limited to those in which he has consented to my jurisdiction.

### IV. The Court Commends Prude's Pro Bono Attorneys

Prude's volunteer attorneys on remand are responsible for discovering that WCI mishandled the Nistler Law Firm's $10,000 check, and that their own client created and used fraudulent documents in this lawsuit.  That makes these attorneys the *conditio sine qua non* of a just outcome in this case.  They have ably achieved their goal of acting *pro bono publico* in this lawsuit. The court commends and thanks them for their successful efforts.

ORDER

IT IS ORDERED that:

(1) Plaintiff's Motion for Leave to File a Sur-reply (dkt. 258) is GRANTED;

(2) Plaintiff's Motion for Sanctions (dkt. 225) is GRANTED IN PART in this fashion:

> Not later than September 20, 2024, the Wisconsin Attorney General's Office shall notify the Nistler Law Firm, S.C., that Waupun Correctional Institution should have returned the law firm's 12/2/2016 Check (No. 2390) rather than deposit the funds into the state's general fund. The AGO shall cite to the Nistler Law Firm the procedures that govern any attempt to seek return of these funds and shall identify by name, position, agency and address the appropriate person to contact if the law firm intends to seek reimbursement.

Plaintiff's Motion for Sanctions is DENIED in all other respects.

(3) Defendants' Motion for Sanctions (dkt. 204) is GRANTED IN PART, and Plaintiff's lawsuit is DISMISSED WITH PREJUDICE. Defendants' Motion for Sanctions is DENIED in all other respects

(4) The Clerk of Court is directed to enter judgment closing this case.

Entered this 19th day of August, 2024

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge